```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHEILA WASHINGTON,

                    Plaintiff
                                                    MEMORANDUM
      -against-                                     AND ORDER

JOHN DOE #1, et al.,                                08 CV 4399 (NGG)(RML)


                    Defendants.
----------------------------------------------------------------X
```

LEVY, United States Magistrate Judge:

        Plaintiff Sheila Washington ("Washington" or "plaintiff") moves for leave to amend her complaint to substitute John and Jane Doe defendants with three named defendants. I held oral argument on the motion on December 23, 2010. For the reasons explained below, the motion is granted.

## BACKGROUND AND FACTS

        On October 29, 2008, Washington filed this civil rights action. Plaintiff's lawsuit arises out of her involuntary hospitalization at Woodhull Medical and Mental Health Center ("Woodhull") from August 25 until September 12, 2006. Plaintiff contends that, because she did not pose a danger to herself or others at the time, her hospitalization was improper. (Complaint, filed Oct. 29, 2008 ("Compl."), at 2.) She alleges violations of the Due Process Clause and 42 U.S.C. § 1983 and seeks compensatory and punitive damages, as well as injunctive relief in the form of expungement of her hospital records. (Id.)

        Familiarity with the facts of this litigation is assumed. Briefly, on August 22, 2006, Kings County Supreme Court issued a mental health warrant directing officials from New York State or the New York City Police Department ("NYPD") to arrest plaintiff and bring her to the

Supreme Court. (Id. ¶ 35.) On August 25, 2006, police officers asked plaintiff to comply with the warrant and subsequently transported her to Woodhull. (Id. ¶¶ 36–39.) Following a psychiatric evaluation, plaintiff was involuntarily admitted to Woodhull, ostensibly pursuant to New York's civil commitment statutes. (Id. ¶¶ 42–47.) In the course of her hospitalization, plaintiff was diagnosed with bipolar disorder. (Discharge Summary, dated Sept. 12, 2006 ("Discharge Summary") at 2, annexed as part of Ex. A to the Declaration of William Brooks, Esq., dated Nov. 24, 2010 ("Brooks Decl. II.").) She was discharged on September 12, 2006. (Id.)

On October 29, 2008, plaintiff commenced the present action. In her original complaint, plaintiff named three "Doe" defendants: defendants John Doe #1 and Jane Doe, NYPD officers who allegedly transported her to Woodhull, and defendant John Doe #2, a physician employed by New York City Health and Hospital Corporation ("HHC") who allegedly certified plaintiff for involuntary hospitalization. (Compl. ¶¶ 2–3, 6, 36–39, 47.) At the time of her filing, Washington did not know the identities of any of these individuals. Through discovery, plaintiff learned the identities of these defendants: NYPD officers Konata Hood ("Hood") and Odelle Walker ("Walker") and Dr. Moise Plantin ("Plantin"). (See Declaration of Toni Gantz, Esq., dated Nov. 10, 2010 ("Gantz Decl."), ¶ 9 & Ex. E.)

At the initial conference on April 29, 2009, I set a July 31, 2009 deadline for plaintiff to amend the complaint to add these new parties. (Scheduling Order, dated Apr. 29, 2009.) This deadline was based in part on the fact that the three-year statute of limitations for plaintiff's claims was due to expire. However, because of a mistake by plaintiff's attorney,[1]

---

[1] Plaintiff's attorney, William Brooks, avers that he drafted the amended complaint before
(continued...)

plaintiff missed the deadline and only attempted to file an amended complaint on September 16, 2009. Defendants Joseph Voight, John P. Lobrasbi, Robert McCue, Efe Edos Edhomeriegue, and HHC (collectively, "the City defendants") objected to the belated filing of the amended complaint on three grounds: that it had been submitted after my July 31, 2009 deadline, that the relevant statute of limitations period had expired (on August 25, 2009), and that plaintiff had not complied with Fed. R. Civ. P. 15(a). (City Defendants' Letter, dated Sept. 17, 2009.)

Plaintiff now seeks leave to file an amended complaint to include Hood, Walker, and Plantin as defendants. She concedes that the statute of limitations has expired but asserts that her proposed amendment would nonetheless be timely because, on account of her mental illness, she is entitled to statutory tolling under N.Y. C.P.L.R. § 208. She also argues that under Fed. R. Civ. P. 15(c) her claims against the new defendants should relate back to her original filing.

### DISCUSSION

N.Y. C.P.L.R. § 208 provides for the tolling of a statute of limitations "[i]f a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues." Once the defendant demonstrates that the claim facially falls outside the limitations period, the plaintiff, not the defendant, bears the burden of proof to show that § 208 is applicable and tolling is appropriate. See Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 567 (3d Dep't 2005); Assad v. City of New York, 656 N.Y.S.2d 669, 669 (2d Dep't 1997).

---

[1](...continued)
the July 31, 2009 deadline and that he mistakenly believed he had filed it electronically in accordance with this deadline. (Declaration of William Brooks, Esq., dated Oct. 8, 2010 ("Brooks Decl. I"), ¶¶ 4–7.)

Where a plaintiff meets this burden and the statute of limitations for the cause of action is three years or longer, the statute of limitations extends the time within which the action must be commenced to "three years after the disability ceases or the person under the disability dies, whichever event first occurs." N.Y. C.P.L.R. § 208.

It is undisputed that in this case, each of plaintiff's claims accrued at the time she was transported to Woodhull, and that each claim has a three-year statute of limitations. Thus, as plaintiff concedes, without the aid of statutory tolling, her claims would be time-barred if asserted after August 25, 2009. However, with the benefit of statutory tolling under C.P.L.R. § 208, her claims would be timely so long as she asserted them within three years of her disability ceasing, if ever, or her dying. Because plaintiff attempted to file her amended complaint adding the new defendants on September 16, 2009, the relevant time period during which she needs the benefit of statutory tolling is from August 25, 2006 to September 16, 2006. This is so because, even if plaintiff had a disability that ended on September 16, 2006, with the benefit of statutory tolling, the three-year statute of limitations would only begin to run on that day and a September 16, 2009 filing would be timely.

The insanity toll of N.Y. C.P.L.R. § 208 is to be construed narrowly and is only available to "those individuals who are unable to protect their legal rights because of an over-all inability to function in society." McCarthy v. Volkswagen of Am., 435 N.E.2d 1072, 1075 (N.Y. 1982). "Difficulty in functioning is not sufficient to establish insanity for purposes of § 208; rather, the plaintiff must be totally unable to function as a result of a 'severe and incapacitating' disability." Swartz v. Berkshire Life Ins. Co., No. 99 Civ. 9462, 2000 WL 1448627, at *5 (S.D.N.Y. Sept. 28, 2000) (quoting Dumas v. The Agency for Child Dev.–New York City Head

Start, 569 F. Supp. 831, 833 (S.D.N.Y. 1983)). Furthermore, the disability of insanity must have been continuous during the relevant period. Basher v. Madonna Realty Corp., 2007 WL 174130, at *3 (E.D.N.Y. Jan. 19, 2007) (citations omitted). Under this continuity requirement, a lucid interval of any significant duration stops the toll. Id. (quoting Carter v. Doe, No. 05 Civ. 8432, 2006 WL 2109461, at *3 (S.D.N.Y. July 26, 2006) (quoting Graboi v. Kibel, 432 F. Supp. 572, 579 (S.D.N.Y. 1977))); see also von Bulow by Auersperg v. von Bulow, 634 F. Supp. 1284, 1300 (S.D.N.Y. 1986) (finding that plaintiff's nine-month lucid interval barred the application of C.P.L.R. § 208).

Here, plaintiff argues that her mental illness, most likely bipolar disorder, has made her continuously unable to protect her legal rights or function in society. (Plaintiff's Memorandum of Law, dated Oct. 8, 2010, at 4.) For this proposition, she relies on two declarations by Dr. Roy Lubit, a physician who reviewed plaintiff's medical records and the submissions in a guardianship proceeding brought in New York Supreme Court, twice evaluated plaintiff (on November 24, 2009 and January 4, 2010), and interviewed plaintiff's attorney, William Brooks. (Declaration of Roy Lubit, M.D., dated Nov. 24, 2010 ("Lubit Decl. I"), ¶ 4.) Lubit avers that petitioner "manifests significant psychiatric symptomology and most likely carries a diagnosis of bipolar disorder" and that from the time of her hospitalization on August 25, 2006 until the present, she has been "unable to protect her legal rights because of an overall inability to understand her psychiatric problems and her needs for assistance in functioning in the world, and her diminished capacity for effectively cooperating with a lawyer." (Id. ¶ 5; Lubit Decl. II ¶ 3.) Plaintiff has also submitted medical records from the time of her hospitalization at Woodhull and the period shortly thereafter. (Brooks Decl. II, Ex. A; Lubit Decl. II., Ex. A.)

After thoroughly reviewing the parties' submissions and hearing oral argument on the motion, I find that plaintiff has met her burden under N.Y. C.P.L.R. § 208. While plaintiff's mental illness and involuntary commitment alone are insufficient to meet the standard, see Joseph S. v. Hogan, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008); Murphy v. West, 533 F. Supp. 2d 312, 316 (W.D.N.Y. 2008), plaintiff's medical records, taken together with Dr. Lubit's declaration, demonstrate that she was continuously "unable to protect [her] legal rights because of an over-all inability to function in society" from before the date she was brought to Woodhull until at least September 16, 2006. The record is replete with references to how plaintiff's judgment was severely impaired before[2] and at the time of her admission[3] and continued to be so throughout,[4] and even after,[5] her stay at Woodhull. After carefully considering not just medical analysis but "all

---

[2] For example, when Dr. Grace Gorham interviewed plaintiff and conducted a home visit on September 16, 2005, she reported that plaintiff's thought form was "digressive," that her insight was "nil," and that she "appears to have grandiose delusions," including that she was in line to inherit the J.C. Penny fortune, and that she was "not amenable to pysch treatment." (Psychiatric Evaluation Report, dated Sept. 16, 2005, annexed as part of Ex. A. to Lubit Decl. II, at 5.)

[3] On Dr. John Lohrasbi's Certificate of Examining Physician to support plaintiff's admission at Woodhull, he stated: "[Patient] currently too aggressive [and] manic to function in community . . . . *No insight*." (Certificate of Examining Physician, dated Aug. 25, 2006, annexed as part of Ex. A. to Lubit Decl. II (emphasis added).)

[4] For example, Dr. Efe Edos Edhomeriegue's notes from August 31, 2006 report that plaintiff was "very argumentative and . . . agitated and was unable to concentrate on thoughts effectively." (Psychiatric Continuation Record, dated Aug. 31, 2006, annexed as part of Ex. A. to Lubit Decl. II.) Likewise, when plaintiff's medical team completed a "comprehensive treatment plan review" on September 5, 2006, they stated that plaintiff remained "irritable, easily agitated, argumentative . . . grandiose." (Comprehensive Treatment Plan Review, dated Sept. 5, 2006, annexed as part of Ex. A. to Lubit Decl. II.)

[5] Plaintiff's discharge papers, dated September 12, 2006, state that "she continues to have poor insight" and that her "judgment is limited." (Discharge Summary at 1.) In addition,
(continued...)

surrounding facts and circumstances" relevant to plaintiff's ability to function generally and to safeguard her legal rights, Basher v. Madonna Realty Corp., No. 01-CV-5116, 2007 WL 174130, at *3 (E.D.N.Y. Jan. 19, 2007), I find that during the relevant time period, plaintiff was continuously unable to function as a result of a "severe and incapacitating" disability. Contrary to defendants' assertion, the toll was not terminated when the plaintiff obtained an attorney and commenced this lawsuit. See Armstrong v. Brookdale Univ. Hosp. and Med. Ctr, 2002 WL 13222, at *10 (E.D.N.Y., Jan. 03, 2002); Ferreira v. Maimonides Med. Ctr, 841 N.Y.S.2d 678, 680 (2d Dep't 2007). Accordingly, plaintiff's motion is granted.[6]

SO ORDERED.

Dated: Brooklyn, New York
February 16, 2011

/s/
ROBERT M. LEVY
United States Magistrate Judge

---

[5](...continued)
plaintiff was referred to New York City Adult Protective Services ("APS") in October 2006 because the New York City Commissioner of Social Services believed that she could not "advocate for herself" or "manage her affairs." (See Verified Petition, dated Mar. 7, 2007, annexed as Ex. B to Brooks Decl. I, ¶ 5.) On November 2, 2006 an APS caseworker conducted a visit of plaintiff's home and concluded that plaintiff "needs an Intensive Mental Program," does "not take her medication," "is exhibiting manic behavior," "refuses to believe she has a mental ailment," and has "confused thinking." (APS Assessment/Services Plan, dated Dec. 2, 2006, annexed as part of Ex. A to Lubit Decl. II.) The caseworker's report also states that plaintiff was unemployed, had no income, required help with daily activities, and had poor living conditions. (Id.)

[6] Because plaintiff is entitled to statutory tolling under N.Y. C.P.L.R. § 208, it is unnecessary to consider whether her claims against the proposed new defendants should relate back to her original filing under Fed. R. Civ. P. 15(c).